UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| HALEY JUSTICE,<br><br>Plaintiff,<br><br>v.<br><br>BOARD OF REGENTS OF TEXAS TECH UNIVERSITY SYSTEM, for and on behalf of Texas Tech University in Lubbock, et al.,<br><br>Defendants. | No. 5:25-CV-237-H |

**MEMORANDUM OPINION & ORDER**

Haley Justice alleges that Tanner Cearley raped her in November 2023. At the time, Justice and Cearley were both first-year students at Texas Tech University. Justice immediately reported the incident to Texas Tech, prompting a Title IX investigation that ended months later in an "informal resolution"—in other words, without a full hearing or a formal finding of responsibility.

In November 2025, Justice brought this suit against Texas Tech's Board of Regents, on behalf of Texas Tech, and Cearley. Relevant here, she alleges that Texas Tech violated Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681–1688, in two ways—by responding with deliberate indifference to her report of the alleged rape and by maintaining a custom or official policy that creates a heightened risk of sexual assault among its students. Texas Tech moved to dismiss Justice's Title IX claims under Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 6.

The Court denies Texas Tech's motion, for two reasons. First, as a threshold matter, Texas Tech's Board of Regents is a proper defendant in this Title IX suit challenging Texas

Tech's handling of Justice's grievance and its general policies regarding sexual assault. Second, Justice has sufficiently pled a Title IX deliberate-indifference claim under both post-reporting and heightened-risk theories. At this stage of the litigation, the Court determines only whether Justice's claims are plausible, and the Court must accept all well-pled facts as true. Viewed through that lens, Justice has plausibly alleged that Texas Tech acted with deliberate indifference by delaying its investigation of her Title IX grievance and by pressuring her into an informal resolution. Additionally, by providing data showing that most sexual-misconduct reports at Texas Tech do not lead to formal investigations or student disciplinary sanctions, Justice has plausibly alleged that Texas Tech's broader policies create a heightened risk of sexual assault among its students. Texas Tech, of course, disputes Justice's assertions, and whether she can ultimately prove these claims is a different matter. For now, though, her claims survive dismissal. Texas Tech's motion to dismiss (Dkt. No. 6) is denied.

## 1. Factual and Procedural Background

### A. Factual Background[1]

In the fall of 2023, Haley Justice enrolled at Texas Tech University as a first-year student. Dkt. No. 1 ¶ 8. That fall, she met Tanner Cearley—another first-year student—in their shared dormitory building. *Id.* ¶ 9. She alleges that on November 5, 2023, Cearley invited her to his dormitory room to watch a movie and then violently raped her, causing physical injuries and severe emotional distress. *Id.* ¶¶ 9–10, 13. Justice promptly reported the incident to the Texas Tech Title IX Office for Student Civil Rights and Sexual

[1] The factual allegations, taken as true, are drawn from Justice's complaint (Dkt. No. 1). *See Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 766 (5th Cir. 2016).

Misconduct (SCRSM). *Id.* ¶ 12. She also reported the incident to the Texas Tech Police Department, which launched a separate criminal investigation. *Id.* ¶¶ 14–15.

Justice claims that Texas Tech acted with "deliberate indifference" after learning of the incident. *Id.* at 5; *see id.* ¶¶ 16–47. From the start, Texas Tech allegedly "push[ed] an informal resolution" to Justice's Title IX grievance procedure to avoid a full investigation, a hearing, and an adjudication of a formal complaint. *Id.* ¶ 20. According to Justice, SCRSM employees repeatedly emphasized that a "formal resolution would be much harder," as it would require "reliv[ing] her trauma over and over"—including by recounting the intimate details at various hearings. *Id.* ¶ 21. They also told Justice that the formal process "could take a long time" with no guarantee of a "satisfying outcome." *Id.* Justice alleges that these sustained efforts to coerce her to accept an informal resolution violated Title IX. *Id.* ¶ 22 (quoting 34 C.F.R. § 106.44(k)(2) ("A recipient must not require or pressure the parties to participate in an informal resolution process. The recipient must obtain the parties' voluntary consent to the informal resolution process . . . ."). In Justice's view, Texas Tech sought an informal resolution to "avoid[] public scrutiny, lawsuits, negative publicity, and loss of funding." *Id.* ¶ 30.

Further, Justice alleges that Texas Tech "intentionally and unreasonably delayed" the grievance process so she would agree to an informal resolution. *Id.* ¶ 31. Almost three months passed between Justice's Title IX report and her last formal interview with Andrea Regalado, the Title IX investigator assigned to Justice's grievance procedure. *Id.* ¶ 35. Yet by that point, Regalado had reportedly collected sufficient evidence—through interviews, text messages, and photographs—to find Cearley responsible by a preponderance of the evidence, as required by Title IX's implementing regulations. *Id.* ¶¶ 34–37 (citing 34 C.F.R.

§ 106.45(h)(1)). On May 31, 2024—nearly seven months after the alleged rape—SCRSM finally provided Justice with a draft of Regalado's investigatory report. *Id.* ¶ 31. All the while, Regalado told Justice that a formal hearing would occur "soon"—which Justice interpreted as a "threat" to "pressure [her] to agree to an informal resolution," since a hearing would be "emotionally taxing." *Id.* ¶ 38.

Additionally, Justice claims that Texas Tech assigned Regalado to facilitate the informal resolution in violation of Title IX's implementing regulations, which specify that "[t]he facilitator for the informal resolution process must not be the same person as the investigator . . . in the recipient's grievance procedures," because the facilitator "must not have a conflict of interest or bias for or against" any complainant or respondent. *Id.* ¶¶ 25–30; 34 C.F.R § 106.44(k)(4). Along these lines, Justice alleges that Regalado was not a "neutral party" to the informal resolution, because Regalado's role as an investigator, which involved interviewing witnesses and evaluating evidence, invited Regalado to pre-judge Justice's and Cearley's credibility. Dkt. No. 1 ¶ 27.

Justice eventually "succumbed to Texas Tech's pressure" and signed an informal resolution that closed Texas Tech's investigation. *Id.* ¶ 24. The agreement included a no-contact order and required Cearley to attend training on sexual misconduct, donate $500 to a local nonprofit that supports survivors of sexual violence, and submit a 500-word essay on the importance of consent. *Id.* ¶¶ 37, 40. According to Justice, these consequences were "bluntly disproportionate," *id.* at 13, considering that Texas Tech's policies provide that "the sanction for a student that engages in sexual assault ranges from suspension for at least one academic year[] to permanent expulsion," *id.* ¶ 42.

Following the informal resolution, Texas Tech allegedly failed to monitor Cearley's compliance with the agreement and to inform Justice about any proportional remedial actions taken against Cearley, such as mandated participation in educational programs or removal from campus housing. *Id.* ¶¶ 43, 45. According to Justice, Texas Tech also failed to prevent encounters between her and Cearley on campus. *Id.* ¶ 46. Lastly, Justice claims that Texas Tech did not provide her with "reasonable accommodations" to safely continue her education, such as counseling and convenient housing relocation. *Id.* ¶ 47.

All told, Justice asserts that her allegations demonstrate Texas Tech's "deliberate indifference" in resolving her Title IX grievance. *Id.* at 14. She claims that this deliberate indifference deprived her of "access to educational opportunities and benefits." *Id.* ¶ 48. After the alleged rape, she avoided leaving her dormitory room, skipped classes and extracurricular activities, and failed a course. *Id.* And because Texas Tech never prevented Cearley from taking the same classes as Justice or encountering her on campus, she eventually left Lubbock and began attending classes remotely. *Id.* ¶¶ 49–50. This caused her to miss out on extracurricular activities and social interactions. *Id.* ¶ 50.

More broadly, Justice alleges that Texas Tech has maintained a "policy of deliberate indifference that creates a heightened risk of sexual misconduct that was known or obvious." *Id.* ¶ 19. In other words, she alleges that Texas Tech's Title IX policies put its students at a greater risk of sexual harassment. She points to U.S. Department of Education data indicating that Texas Tech is one of "the most dangerous college campuses in Texas." *Id.* ¶ 17. And she contends that Texas Tech's own statistics "reveal consistent[ly] high levels of sexual misconduct reported throughout the years, minimal interest in investigating such complaints, and irrelevant sanctions against students resulting from investigations." *Id.*

¶ 18. For example, Texas Tech reported that it received 251 reports of sexual misconduct from September 1, 2023, through August 31, 2024, yet conducted only 12 formal investigations. *Id.* ¶ 17. Of those 12 formal investigations, only three led to disciplinary sanctions. *Id.* And "[t]he volume of sexual misconduct incidents reported by Texas Tech shows no significant decrease year over year." *Id.* ¶ 19. In Justice's view, this data shows Texas Tech's "deliberate indifference" in failing to investigate and punish most reported incidents of sexual misconduct, which creates a heightened risk of sexual misconduct among Texas Tech's students in violation of Title IX. *Id.* ¶ 63. Justice claims that she directly suffered from this broader "policy of deliberate indifference." *Id.* ¶ 19.

**B. Procedural Background**

In November 2025, Justice brought this suit against "the Board of Regents of Texas Tech University System, for and on behalf of Texas Tech University," and Tanner Cearley. *Id.* at 1. As to Texas Tech, she claims that it is "liable under Title IX for knowingly acting with deliberate indifference" to the alleged rape, which was based on Justice's sex. *Id.* ¶ 52. She seeks damages for, among other things, the loss of educational opportunities and past and future medical expenses. *Id.* ¶ 64. As to Cearley, Justice brings state-law claims for sexual assault and intentional infliction of emotional distress. *Id.* ¶¶ 65–72. She seeks actual damages for her injuries and exemplary damages resulting from malice. *Id.* ¶¶ 69, 72.

Cearley answered the complaint. Dkt. No. 5. Texas Tech, however, moved to dismiss Justice's Title IX claims against it under Rule 12(b)(6). Dkt. No. 6. Justice responded, Dkt. No. 7, and Texas Tech replied, Dkt. No. 9, so the motion is ripe.

**2. Legal Standards**

A complaint must contain "a short and plain statement of the claim showing that the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2). The plaintiff must allege sufficient factual matter to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). If a complaint "pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (citation modified) (quoting *Twombly*, 550 U.S. at 557). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

A defendant can challenge a complaint's factual sufficiency with a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). In resolving that motion, the Court must "accept all well-ple[d] facts as true and view those facts in the light most favorable to the plaintiff." *Richardson v. Axion Logistics, LLC*, 780 F.3d 304, 306 (5th Cir. 2015) (citation modified) (quoting *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010)). The Court does not, however, "accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)). The Court then determines whether the plaintiff's well-pled factual allegations plausibly entitle her to relief. *Iqbal*, 556 U.S. at 679.

The Court considers only the contents of the pleadings when resolving a motion to dismiss under Rule 12(b)(6). *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 766–67 (5th Cir. 2016).

Critically, the Fifth Circuit has emphasized that district courts should only dismiss cases under Rule 12(b)(6) when "a plaintiff fails to allege any set of facts in support of [her] claim which would entitle [her] to relief" or "the complaint lacks an allegation regarding a required element necessary to obtain relief." *Id.* at 766. Indeed, "[m]otions to dismiss under Rule 12(b)(6) 'are viewed with disfavor and are rarely granted.'" *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (quoting *Test Masters Educ. Servs., Inc. v. Singh,* 428 F.3d 559, 570 (5th Cir. 2005)).

**3. Analysis**

**A. Texas Tech's Board of Regents is a proper defendant in this Title IX suit.**

In this action, Justice sued "the Board of Regents of Texas Tech University System, for and on behalf of Texas Tech University." Dkt. No. 1 at 1; *accord* Dkt. No. 7 at 7–8. As a threshold matter, Texas Tech contends that Justice cannot maintain her Title IX claims against the Board of Regents because Title IX imposes liability on "institution[s] receiving federal financial assistance"—not their governing officials. Dkt. No. 9 at 1–2.

While Texas Tech is correct that Title IX authorizes suit against institutions that receive federal funds, the Supreme Court has long recognized that official-capacity suits are simply another way of pleading an action against the entity of which the relevant officer is an agent. *Harrower ex rel. J.H.1 v. Eastland Indep. Sch. Dist.*, 786 F. Supp. 3d 998, 1016 (N.D. Tex. 2025) (first quoting *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257 (2009); and then quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.5 (1978)). Courts thus treat a

suit against an entity's governing officials as a suit against the entity itself. *See id.* (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)). So courts within the Fifth Circuit have allowed plaintiffs to sue a university's governing board on behalf of the university—including in Title IX actions. *See, e.g.*, *Doe v. Bd. of Supervisors of Univ. of La. Sys.*, 650 F. Supp. 3d 452, 458, 467–71 (M.D. La. 2023) (resolving Title IX claim against the Board of Supervisors of the University of Louisiana System); *see also, e.g.*, *EEOC v. Bd. of Supervisors for Univ. of La. Sys.*, 559 F.3d 270, 271 n.1 (5th Cir. 2009) (allowing a suit against the Board of Supervisors for the University of Louisiana System on behalf of the University of Louisiana at Monroe).

This Court's recent decision in *Harrower* is instructive. 786 F. Supp. 3d 998. There, the plaintiffs brought a Title IX suit against a school district and its board members. *Id.* at 1005. The Court dismissed the plaintiffs' Title IX claims against the board members—but only because those claims were "redundant," given that the plaintiffs had also sued the school district. *Id.* at 1015. Indeed, the Court recognized that the plaintiffs could bring their Title IX claims against either the school district or its board members in their official capacities; suing both was unnecessarily duplicative. *Id.* at 1015–16. Unlike *Harrower*, Justice has not sued the Board as a separate defendant but rather on behalf of Texas Tech. Dkt. No. 1 at 1; *accord* Dkt. No. 7 at 7–8. So her suit is proper under relevant case law.

Moreover, Justice's choice to sue the Board of Regents on behalf of Texas Tech makes sense under state law. Section 109.001 of the Texas Education Code vests "[t]he governance, control, jurisdiction, organization, and management of the Texas Tech University System" in the System's "board of regents." Tex. Educ. Code § 109.001(c). Because the Board is responsible for directing "the policies" of the System's component

institutions—including Texas Tech University—the Board is a proper defendant in this suit challenging Texas Tech's policies. *Id.* § 109.002; Dkt. No. 1 ¶ 19; *cf.* 15A Am. Jur. 2d *Colleges and Universities* § 44.

Yet Texas Tech contends that even if the Board is a proper defendant, Justice cannot maintain her claims against the Board because she has not alleged that the Board "controlled the specific decision or action causing [her] injury." Dkt. No. 6 at 5. To the extent this argument presumes that Justice has sued the Board as a separate defendant, the argument misunderstands the posture of this case: Justice has sued the Board on behalf of Texas Tech, not as a separate defendant. Regardless, the two cases that Texas Tech cites to support its argument—*Texas Tech University System v. Martinez*, 691 S.W.3d 415 (Tex. 2024), and *Glass v. Sul Ross State University*, No. PE:22-CV-014, 2023 WL 2028928 (W.D. Tex. Feb. 14, 2023), *R. & R. adopted*, 2023 WL 11832316 (Mar. 8, 2023)—are inapplicable.

In *Martinez*, a former employee of Texas Tech University's Health Sciences Center sued the University's Board of Regents, alleging that she was fired because of her age in violation of Section 21.051 of the Texas Labor Code. 691 S.W.3d at 418. That provision—as interpreted by the Texas Supreme Court—permits a plaintiff to sue only the party with "actual control" over the plaintiff's "employment opportunities." *Id.* at 421–22 (discussing *NME Hospitals, Inc. v. Rennels*, 994 S.W.2d 142 (Tex. 1999)). Because the *Martinez* plaintiff did not allege that the Board controlled her employment, the court concluded that she failed to state a claim against the Board. *Id.* at 425. But this conclusion was entirely a matter of state law and is thus irrelevant for federal Title IX claims.

*Glass* is also unavailing. There, the plaintiff brought a Title IX retaliation claim against the Board of Regents for the Texas State University System. *Glass*, 2023 WL

2028928, at *17–18. "Retaliation against a person because that person has complained of sex discrimination is another form of intentional sex discrimination" that Title IX prohibits. *Id.* at *17 (quoting *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173 (2005)). The *Glass* plaintiff alleged that Texas State's Board "retaliated" against her by serving her with trespass and harassment warnings after she reported sexual misconduct. *Id.* at *1, *17–18. The magistrate judge recommended that the district court dismiss the claim because the plaintiff had not sufficiently alleged a "causal connection" between her sexual-misconduct report and the Board's trespass and harassment warnings. *Id.* at *18. But causation is an element specific to Title IX retaliation claims. *See Lewis v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. Coll.*, 134 F.4th 286, 292 (5th Cir. 2025). It does not apply to other Title IX claims—including deliberate-indifference claims. *Cf. Doe 1 v. Baylor Univ.*, 240 F. Supp. 3d 646, 657–62, 658 n.4 (W.D. Tex. 2017) (distinguishing the different kinds of Title IX claims). So, contrary to Texas Tech's arguments, Justice need not allege that Texas Tech's Board of Regents directly caused her injury.

Finally, Texas Tech contends that the Board is not a proper defendant because Justice never served the Board. Dkt. No. 9 at 1. Texas Tech notes that its counsel waived service on behalf of "Texas Tech University"—not the Board. *Id.* (citing Dkt. No. 4 at 1). But Justice addressed the relevant summons to the "Board of Regents of Texas Tech University System, for and on behalf of Texas Tech University." Dkt. No. 3 at 1. So, if anything, counsel's waiver of service as to "Texas Tech University," Dkt. No. 4 at 1, implies that counsel understood Justice to be suing the Board on behalf of Texas Tech—confirming the Court's analysis.

In short, precedent and Sections 109.001 and 109.002 of the Texas Education Code indicate that Justice properly sued Texas Tech's Board of Regents on behalf of Texas Tech. Texas Tech has failed to demonstrate otherwise.

**B. Justice states a plausible Title IX deliberate-indifference claim against Texas Tech.**

Regarding the substance of Justice's complaint, Texas Tech contends that Justice fails to state a Title IX deliberate-indifference claim against Texas Tech under either post-reporting or heightened-risk theories. Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Congress enacted this provision with two principal objectives: "[t]o avoid the use of federal resources to support discriminatory practices and to provide individual citizens effective protection against those practices." *Roe v. Cypress-Fairbanks Indep. Sch. Dist.*, 53 F.4th 334, 340 (5th Cir. 2022) (citation modified) (quoting *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 286 (1998)). To these ends, plaintiffs can enforce Title IX through an implied private right of action for damages. *Franklin v. Gwinnett Cnty. Pub. Schs.*, 503 U.S. 60, 73 (1992).

Under Title IX, an institution of higher education that receives federal funding may be liable for student-on-student harassment if:

> (1) [the institution] had actual knowledge of the harassment, (2) the harasser was under the [institution's] control, (3) the harassment was based on the victim's sex, (4) the harassment was 'so severe, pervasive, and objectively offensive that it effectively bar[red] the victim's access to an educational opportunity or benefit,' and (5) the [institution] was deliberately indifferent to the harassment.

*Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 165 (5th Cir. 2011) (quoting *Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 650 (1999)). Certainly, "rape is severe and objectively offensive sexual harassment sufficient to support an actionable Title IX claim." *Doe*, 650 F. Supp. 3d at 469. To prove that the institution was "deliberately indifferent" in its response—or lack thereof—to the alleged sexual harassment, *Sanches*, 647 F.3d at 165, the plaintiff must show that the institution's response was "clearly unreasonable in light of the known circumstances," *Davis*, 526 U.S. at 648; *see also Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 586 (5th Cir. 2020). School administrators who "respond[] reasonably to a risk of harm" are not deliberately indifferent, even if their response failed to prevent the relevant harm. *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 410 (5th Cir. 2015) (quoting *Doe ex rel. Doe v. Dall. Indep. Sch. Dist.*, 220 F.3d 380, 384 (5th Cir. 2000)). Therefore, this Court has observed that "[d]eliberate indifference is a high bar; mere negligence is not enough." *Harrower*, 786 F. Supp. 3d at 1017.

Courts in the Fifth Circuit recognize "two general avenues" for Title IX deliberate-indifference claims: one for claims of post-reporting deliberate indifference, and another for claims of heightened risk deliberate indifference. *Owens v. La. State Univ.*, 709 F. Supp. 3d 219, 227–28 (M.D. La. 2023); *see also Doe 1*, 240 F. Supp. 3d at 657–58. The former is a claim that an institution was deliberately indifferent in responding to a particular reported incident of sexual assault. *Doe 1*, 240 F. Supp. 3d at 658. And the latter is a claim that an institution maintained a broader "official policy" of deliberate indifference that "created a heightened risk of sexual assault" among its students at the time of the relevant incident. *Harrower*, 786 F. Supp. 3d at 1020. Justice has alleged a Title IX deliberate-indifference claim against Texas Tech under each theory.

**i. Justice has sufficiently pled a Title IX post-reporting deliberate-indifference claim.**

Justice first claims that Texas Tech "acted with deliberate indifference" in processing her Title IX grievance. Dkt. No. 1 ¶ 55. While "[d]eliberate indifference is a tall hurdle," it is not insurmountable—especially at the pleading stage, where courts evaluate only whether the plaintiff has stated a plausible claim for relief. *Sewell*, 974 F.3d at 582; *see id.* at 586 (concluding that the plaintiff's Title IX claims "survive[d] the pleading stage"). Because (1) Justice alleges detailed, specific factual allegations, and (2) the Court must accept those allegations as true and view them in the light most favorable to her, it is plausible that Texas Tech's response to the alleged rape was "clearly unreasonable." Thus, Justice's post-reporting deliberate-indifference claim survives Texas Tech's motion to dismiss. *Davis*, 526 U.S. at 649.

Specifically, Justice alleges that Texas Tech "pressure[d] [her] to agree to an informal resolution" to her grievance procedure by "repeatedly" emphasizing that a formal resolution would force her to "relive her trauma over and over" with no guarantee of a "satisfying outcome." Dkt. No. 1 ¶¶ 20–21, 55. Justice also claims that by the end of November 2023, Texas Tech had collected sufficient evidence to find Cearley responsible for the alleged rape by a preponderance of the evidence—the applicable standard in Title IX grievance procedures. *Id.* ¶ 36; *see also* 34 C.F.R. § 106.45(h)(1). By that point, Texas Tech had gathered formal complaints from Justice and a community advisor, oral statements and text messages from both Justice and Cearley, videos of Justice in the dormitory at the time of the incident, and photographs of bruising on Justice's body. *Id.* ¶ 37. Additionally, Texas Tech had received the results of a sexual-assault examination that allegedly corroborated Justice's report. *Id.* ¶¶ 14, 37. And Cearley admitted to investigators that he "grab[bed] [Justice's]

neck," that he "removed [her] shorts and underwear," and that she "was bleeding" following sexual contact. *Id.* ¶ 37. Despite this evidence, Texas Tech did not share a preliminary draft of its official investigation report until approximately six months later. *See id.* ¶ 38. It also failed to hold a grievance hearing and never sanctioned Cearley. *Id.* ¶¶ 38–43. Further, following the informal resolution, Texas Tech allegedly failed to "prevent encounters" between Justice and Cearley on campus, to provide "reasonable accommodations to help [Justice] continue pursuing her education safely," and to inform [Justice] of "proportional remedial actions" taken against Cearley—such as removal from campus housing or other disciplinary measures. *Id.* ¶¶ 45–47.

Viewed together and in the light most favorable to Justice, these allegations make it plausible that Texas Tech's response to the alleged rape was "clearly unreasonable." *Davis*, 526 U.S. at 649. Indeed, Justice's allegations are like those in *Doe 11 v. Baylor Univ.*, No. 6:17-CV-228, 2018 WL 11471249 (W.D. Tex. Dec. 28, 2018), where the court concluded that the plaintiff adequately pled a post-reporting deliberate-indifference claim. There, the plaintiff alleged, among other things, that university officials "questioned [her] in a way that suggested they were seeking a particular outcome for the investigation" and "declined to assist [her] to avoid her assailant." *Id.* at *1, *5; *see also Doe 1*, 240 F. Supp. 3d at 660 (concluding that discriminatory harm under Title IX can include "endur[ing] an educational environment that constantly exposes [the student] to a potential encounter with [her] . . . assailant"). The court thus concluded that the plaintiff's allegations "state[d] a plausible claim that [the University's] response was clearly unreasonable." *Doe 11*, 2018 WL 11471249, at *5. Here, too, the Court concludes that Justice states a plausible claim that Texas Tech's response to the alleged rape was "clearly unreasonable." *Id.*

Moreover, Justice alleges specific violations of Title IX's grievance procedures. She claims that Texas Tech's "push [for] an informal resolution" to her grievance procedure violated 34 C.F.R. § 106.44(k)(2), which prohibits "pressur[ing] the parties to participate in an informal resolution process." Dkt. No. 1 ¶¶ 20–22 (discussing 34 C.F.R. § 106.44(k)(2)). Additionally, Justice claims that Andrea Regalado both investigated her Title IX grievance and facilitated the informal resolution—despite 34 C.F.R. § 106.44(k)(4), which bars "[t]he facilitator for the informal resolution process" from also investigating the grievance. *Id.* ¶¶ 25–30 (discussing 34 C.F.R. § 106.44(k)(4)). These alleged violations of Title IX's grievance procedures may demonstrate deliberate indifference. *See, e.g.*, *Doe v. Va. Polytechnic Inst.*, No. 7:25-CV-846, 2026 WL 1491454, at *20 (W.D. Va. May 21, 2026) (concluding that a university's "failure to comply . . . with applicable Title IX regulations provide[s] probative evidence of deliberate indifference"). So these allegations support the plausibility of Justice's post-reporting claim. *Id.* at *20–22 (denying the defendant's motion to dismiss the plaintiff's Title IX deliberate-indifference claims).

To be sure, Texas Tech categorically denies Justice's allegations. Texas Tech argues that it "thoroughly investigated" Justice's grievance and "diligently gather[ed] facts and review[ed] evidence" throughout the grievance procedure. Dkt. No. 6 at 7. Any delays were the byproduct of this careful investigation, Texas Tech contends. *Id.* Indeed, Texas Tech argues that Justice's allegations "contain no more than mere speculation" regarding the reason for these delays. *Id.* at 8. Further, Texas Tech suggests that "[Justice's] own reluctance to engage in the Title IX process" slowed the process and ultimately resulted in an informal resolution. *Id.* at 7.

At this stage of the litigation, however, the Court must assume the veracity of Justice's factual allegations and evaluate whether those allegations plausibly entitle her to relief. *Iqbal*, 556 U.S. at 679. Certainly, Texas Tech can challenge the evidentiary support for Justice's allegations at summary judgment and, if necessary, at trial. And the evidence may ultimately attribute the delays in resolving Justice's grievance procedure to SCRSM employees "diligently gathering facts and reviewing evidence," like Texas Tech maintains. Dkt. No. 6 at 7. But at this point, Justice's allegations concerning the delays in her grievance process, the pressure from SCRSM employees to pursue an informal resolution, and Texas Tech's failures to prevent encounters with Cearley on campus provide "sufficient facts to 'nudge [her] claim[] across the line from conceivable to plausible.'" *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 768 (5th Cir. 2019) (quoting *Twombly*, 550 U.S. at 547).

**ii. Justice has sufficiently pled a Title IX heightened-risk claim.**

In addition to her post-reporting claim, Justice brings a heightened-risk claim against Texas Tech. Specifically, she alleges that Texas Tech "maintained a policy of deliberate indifference that created a heightened risk of sexual misconduct" among its students at the time of the alleged rape. Dkt. No. 1 ¶ 63. While the Fifth Circuit has not expressly recognized a Title IX heightened-risk claim, district courts within the Fifth Circuit—including this Court—have. *Harrower*, 786 F. Supp. 3d at 1019–20. A Title IX heightened-risk claim is "based on allegations that the defendants failed to address sexually hostile environments after receiving reports of sexual assault." *Doe v. Tex. A&M Univ.*, 634 F. Supp. 3d 365, 376 (S.D. Tex. 2022). Courts evaluate this claim by asking whether the institution's action (or lack thereof) prior to the plaintiff's report of sexual assault demonstrates "an official policy that fails to adequately respond to complaints of sexual violence or assault."

*Harrower*, 786 F. Supp. 3d at 1020 (quoting *Doe No. 1 v. Tex. Christian Univ.*, No. 3:20-CV-106, 2021 WL 12289429, at *9 (N.D. Tex. Jan. 12, 2021)). "Th[is] official policy need not be a 'formal institutional decision'"; rather, it "can be a custom tantamount to an official policy that allegedly caused or created a heightened risk of sexual assault." *Id.* (quoting *Doe 12 v. Baylor Univ.*, 336 F. Supp. 3d 763, 779–81 (W.D. Tex. 2018)).

Relevant here, courts within the Fifth Circuit have held that plaintiffs stated a plausible heightened-risk claim where they alleged data or institutional practices to support their claim. For example, in *Doe 12*, the court denied Baylor University's motion to dismiss the plaintiffs' heightened-risk claim where the plaintiffs alleged that Baylor "failed to adequately investigate reported sexual assaults" and provided data to support that allegation. *Doe 12*, 336 F. Supp. 3d at 782–83 (concluding that the plaintiffs' allegations "raise[d] [their] right to relief above the speculative level" (internal quotation marks omitted) (quoting *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007))). Similarly, in *Doe No. 1*, the court concluded that the plaintiffs stated a plausible heightened-risk claim where they alleged deficiencies in Texas Christian University's "practices in handling reports of discrimination and assault," including in "fail[ing] to investigate [victims'] claims or punish their assailants." *Doe. No. 1*, 2021 WL 12289429, at *9–10; *see also Harrower*, 786 F. Supp. 3d at 1020–21.

In light of these cases, Justice has plausibly stated a heightened-risk claim, because she provides several pieces of data to support her claim. First, she notes that during the year she was allegedly raped, the U.S. Department of Education identified Texas Tech "as one of . . . the most dangerous college campuses in Texas." Dkt. No. 1 ¶ 17. Second, she identifies data showing that from September 1, 2023, through August 31, 2024, Texas Tech

received 251 reports of sexual misconduct yet conducted only 12 formal investigations and issued student disciplinary sanctions in only three instances. *Id.* Third, she provides data from other years indicating that Texas Tech only investigated a fraction of the sexual misconduct reports it received. *Id.* ¶¶ 18–19. By including this data in her complaint, she has plausibly alleged that Texas Tech has a custom or official policy that creates a heightened risk of sexual assault among its students.

Texas Tech interprets this data differently. It argues that sexual-misconduct reports may be categorized as "unresolved" for reasons "mandated by law or policy," like when the conduct was outside Texas Tech's jurisdiction or the complainant abandoned the grievance process.[2] Dkt. No. 6 at 10. And it notes that the statistics regarding "sexual misconduct" may include many instances of sexual harassment that are not analogous to the alleged rape that Justice experienced. *See id.* Texas Tech may ultimately be right. But discovery is necessary to resolve that question. Indeed, whether Justice can prove that Texas Tech has a custom or official policy that generates a heightened risk of sexual assault among its students is an inquiry better suited for summary judgment or for trial—not for the pleading stage. At present, Justice's allegations, viewed most favorably, state a plausible heightened-risk claim.

---

[2] For support, Texas Tech cites Texas Tech University System Regulation 07.06.A, which Texas Tech attaches to its motion to dismiss. Dkt. No. 6 at 10; Dkt. No. 6-3. But the Court does not consider evidence outside the pleadings when ruling on a motion to dismiss, unless the documents are attached to the motion, referenced in the plaintiff's complaint, and "central to [the plaintiff's] claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000) (citation modified). Regulation 07.06.A is not "central" to Justice's claims because it is "not necessary to establish an element of any of them." *Antero Res. Corp. v. C & R Downhole Drilling, Inc.*, No. 4:16-CV-668, 2019 WL 13193898, at *3 (N.D. Tex. July 22, 2019). So the Court does not consider Regulation 07.06.A in resolving Texas Tech's motion to dismiss.

**4. Conclusion**

Because Justice has stated a plausible Title IX deliberate-indifference claim under both post-reporting and heightened-risk theories, the Court denies Texas Tech's motion to dismiss under Rule 12(b)(6) (Dkt. No. 6). In doing so, however, the Court "does not express any opinion regarding the strength" of Justice's claims. *Preston v. Seterus, Inc.*, 931 F. Supp. 2d 743, 770 (N.D. Tex. 2013). Rather, the Court concludes—as it must at this stage of the litigation—that Justice's allegations, when assumed true and viewed most favorably, state a plausible claim for relief. Accordingly, the Court denies Texas Tech's motion to dismiss (Dkt. No. 6).

So ordered on September 22, 2026.

JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE